FILED
CLERK, U.S. DISTRICT COURT
12/13/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>COLIN GILBERT,<br><br>　　　　Defendant. | CR No. 2:23-cr-00619-FLA<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1001(a)(2): Making False Statements] |

　　The United States Attorney charges:

[18 U.S.C. § 1001(a)(2)]

A.　THE MANZANITA BAND OF THE KUMEYAAY NATION

　　At times relevant to this Information:

　　1.　The Manzanita Band of the Kumeyaay Nation was a federally recognized tribe ("Manzanita Tribe").

　　2.　The reservation for the Manzanita Tribe ("Manzanita Reservation") was located in southeastern San Diego County, California.

　　3.　In 2012, Chief A, who was not a member of the Manzanita Tribe, founded the Manzanita Tribal Police Department ("Manzanita PD") and thereafter served as its Chief of Police until 2018, when he

stepped down in title only.  Chief A was replaced by Chief B as Chief of Police, who served from 2018 to 2020.

4.   In February 2020, the Manzanita Tribe terminated the Manzanita PD and its relationship with Chief A and Chief B.

B.   THE BADGES-FOR-MONEY SCHEME

At times relevant to this Information:

5.   Beginning in or around 2016, Chief A and other members of the Manzanita PD ("recruiters"), including defendant GILBERT, began to solicit wealthy individuals in the Los Angeles area to become members of the Manzanita PD.  Chief A, defendant GILBERT, and other recruiters would refer to these wealthy individuals as the "VIP Group," the "ghostriders," or the "Admin Bureau."  Typically, these individuals were asked to make a large payment, ranging from $5,000 to $100,000 and sometimes styled as a "donation," in exchange for membership in the Manzanita PD.  The individuals who made the payments believed that a Manzanita PD badge could grant the holder privileges in connection with the purchase and carrying of firearms, including the ability to carry concealed firearms in California and elsewhere.

6.   Members of the VIP Group were not expected to perform any law enforcement services for the Manzanita PD, and many never visited the Manzanita Reservation at all.  To further conceal the scheme, Chief A, defendant GILBERT, and other recruiters would sometimes ask the VIP Group to enroll in courses offered by the California Commission on Peace Officer Standards and Training ("POST").

7.   Chief A, defendant GILBERT, and others set up an office space for the Manzanita PD in an office building in El Segundo,

California, in Los Angeles County, within the Central District of California, which was approximately 177 miles and a several hour drive to the Manzanita Reservation in San Diego County. The office space was located inside the space used by a limousine and car service company. Neither the office space nor the limousine and car service company had any affiliation with or relationship to the Manzanita Tribe.

8. At no time was any member of the Manzanita PD also a member of the Manzanita Tribe. At no time was the Manzanita PD recognized by the Bureau of Indian Affairs ("BIA") or the State of California as a cross-deputized police department with federal or state law enforcement authority. At no time did members of the Manzanita PD have the authority to identify themselves as either federal law enforcement officers, state law enforcement officers, or peace officers, and at no time did the Manzanita PD have the authority to engage in any law enforcement activities off the reservation.

9. Chief A, defendant GILBERT, and others issued badges and credentials reflecting membership to the Manzanita PD. Most members of the Manzanita PD, including defendant GILBERT, lived in the Los Angeles area, hours away from the Manzanita Reservation. Many members of the Manzanita PD, including defendant GILBERT, sought to avail themselves of privileges available to federal and state law enforcement officers while off the reservation, including using Manzanita PD credentials to acquire firearms and conceal carry firearms.

//
//

C. <u>GILBERT ARRANGED FOR B.D. TO RECEIVE MANZANITA PD CREDENTIALS</u>

At times relevant to this Information:

10. Prior to August 14, 2019, defendant GILBERT arranged for B.D. to acquire Manzanita PD credentials. Defendant GILBERT believed B.D. to be a wealthy individual with no prior law enforcement experience or training, but, unbeknownst to defendant GILBERT, B.D. was actually an undercover agent working with law enforcement.

11. On or about August 14, 2019, B.D. met with Chief B and defendant GILBERT. At defendant GILBERT's direction, B.D. handed Chief B a check for $5,000 made out to the Manzanita Tribal Police Foundation, and Chief B handed B.D. Manzanita PD credentials reflecting B.D.'s name and photograph. The credentials identified B.D. as a "police officer" for the Manzanita PD and referred to him as a "duly appointed and certified tribal law enforcement officer." The credentials also stated "CCW authorized," which purported to assert that B.D. was authorized to carry a concealed weapon.

12. Prior to August 14, 2019, as defendant GILBERT then knew, B.D. had not completed any training courses with California POST.

13. On or about November 14, 2019, defendant GILBERT falsely told the Federal Bureau of Investigation ("FBI") that B.D. had not received any Manzanita PD credentials, when, as defendant GILBERT then knew, B.D. had already been given his credentials.

14. On or about November 17, 2019, defendant GILBERT called B.D. and asked B.D. to return his Manzanita PD credentials. Defendant GILBERT explained that there was a federal investigation and that defendant GILBERT wanted to be able to represent to the FBI that "[B.D.] does not have his credentials. That's what I wanna be able to say. As opposed to saying well he has his credentials and

4

he's promised not to use them."  Defendant GILBERT then asked B.D. to either ship his credentials back to him or set them aside until defendant GILBERT could retrieve them.  Defendant GILBERT also instructed B.D. that if anyone called to ask about the Manzanita PD, B.D. should falsely represent that B.D. did not "have an ID."  B.D. asked, "so I'll never make mention of the ID, like basically that didn't happen, right?"  Defendant GILBERT replied, "Yeah."

D.   THE FALSE STATEMENTS

15.  On or about November 14, 2019, in Los Angeles County, within the Central District of California, in a matter within the jurisdiction of the executive branch of the government of the United States, namely, the FBI, defendant GILBERT knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to the FBI knowing that such statements and representations were untrue, specifically, that B.D. did not have Manzanita PD credentials and would not receive Manzanita PD credentials until after completing a specific training class, when, as defendant GILBERT then knew, B.D. had in fact received his

//
//

1  Manzanita PD credentials on or about August 14, 2019, without having
2  completed the specific training class.

                    E. MARTIN ESTRADA
                    United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

CASSIE D. PALMER
Assistant United States Attorney
Deputy Chief, Public Corruption
and Civil Rights Section

FRANCES S. LEWIS
Assistant United States Attorney
Public Corruption and Civil
Rights Section